UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
THOMAS EMMICK, IRA derivatively on behalf of :
Nominal Defendant Twinlab Corporation, :
                                                                     :
                              Plaintiff,            :    Civ. No. 01-4320 (DRH) (ARL)
                                                                     :
          -against-                                   :
                                                                     :
ROSS BLECHMAN, BRIAN BLECHMAN, NEIL :
BLECHMAN, STEVE BLECHMAN, DEAN :
BLECHMAN, STEPHEN L. WELLING, :
JONATHAN D. SOKOLOFF, JOHN G. :
DANHAKL, and WILLIAM U. WESTERFIELD, :
                                                                     :
                              Defendants,      :
                                                                     :
          -and-                                        :
                                                                     :
TWINLAB CORPORATION,                      :
                                                                     :
                              Nominal Defendant.    :
------------------------------------------------------------------- X

**PLAINTIFF'S MEMORANDUM OF LAW**
<u>**IN SUPPORT OF FINAL APPROVAL OF THE PROPOSED SETTLEMENT**</u>

| | |
|---|---|
| WECHSLER HARWOOD LLP | ZWERLING, SCHACHTER |
| Robert I. Harwood (RH-3286) | & ZWERLING, LLP |
| Daniella Quitt (DQ-1963) | Richard A. Speirs (RS-8872) |
| 488 Madison Avenue | 41 Madison Avenue |
| New York, New York 10022 | New York, New York 10010 |
| (212) 935-7400 | (212) 223-3900 |

**Plaintiff's Co-Lead Counsel**

## **TABLE OF CONTENTS**

I.  THE PROPOSED SETTLEMENT ............................................................................................. 2

    A.  The Settlement Consideration .......................................................................................... 2

    B.  After the Court Approved Notice, The Reaction of the Class Is Favorable ...................... 2

II.  LEGAL AUTHORITY ............................................................................................................... 3

    A.  General Principles of Judicial Review of Settlements of Shareholder Derivative Lawsuits .............................................................................................................................. 3

    B.  The Proposed Settlement Provides Significant Benefits To Twinlab ............................... 5

        1.  The Complexity, Expense, and Likely Duration of The Litigation ............................... 5

        2.  The Reaction of Current Shareholders Demonstrates The Adequacy of The Proposed Settlement ................................................................................................................. 7

        3.  The Stage of The Proceeding and The Amount of Discovery Completed .................... 8

        4.  The Risks of Establishing Liability ............................................................................... 8

        5.  There Are Substantial Risks of Establishing Damages ................................................. 9

        6.  The Risk of Maintaining The Action through Trial ..................................................... 10

        7.  The Ability of Defendants to Withstand A Greater Judgment .................................... 11

        8.  The Range Of Reasonableness Of The Proposed Settlement In Light Of All The Risks Of Litigation .............................................................................................................. 11

        9.  Opinion of Counsel/Settlement Negotiations ............................................................. 12

**PRELIMINARY STATEMENT**

Plaintiff in this shareholder derivative action (the "Action") brought pursuant to Fed. R. Civ. P. 23.1 on behalf of Twinlab Corporation, now known as TL Administration Corporation ("Twinlab" or the "Company"), have reached a proposed settlement (the "Settlement") with defendants which has been memorialized in a Stipulation of Settlement dated June 20, 2005 (the "Stipulation").

Under the terms of the Settlement, $1,000,000 will be paid by the individual defendants' insurer and will be deposited in a settlement fund that will be used to resolve a related securities class action pending before this Court, *In re Twinlab Corp. Securities Litig.*, 00-CV-6975 (DRH) (the "Securities Action").

The Settlement is the result of arms-length negotiations between experienced counsel on both sides. The Settlement was preceded by, and resulted from an extensive investigation, which included consulting with experts in the areas of accounting and corporate governance, reviewing and analyzing treatises, articles, and authoritative reports on corporate governance issues, reviewing and analyzing Twinlabs's public filings with the Securities and Exchange Commission (the "SEC"), press releases, and other publicly available materials.

The Settlement was also preceded by substantial motion practice. For instance, the motion to dismiss the complaint was fully briefed and pending at the time of the Settlement and raised issues concerning demand requirements, and the viability of the causes of action asserted against some or all of the defendants. Based on this research and analysis, plaintiff's counsel concluded that the terms and conditions of the Stipulation are fair, reasonable, and adequate to plaintiff, Twinlab, and its stockholders. Plaintiff's counsel agreed to the Stipulation after considering (a) the substantial benefits arising from settlement of the litigation, (b) the

attendant risks of the litigation, and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of the Stipulation.

Accordingly, plaintiff seeks final court approval of the Settlement pursuant to Fed. R. Civ. P. 23.1. The procedural and factual history of this litigation are set forth in detail in the Joint Declaration of Richard Speirs and Robert I. Harwood In Support of Approval of The Proposed Settlement For An Award of Attorneys' Fees And Reimbursement of Expenses. Plaintiff will only briefly repeat this history here and respectfully refers to the Joint Declaration for all the factual detail in support of plaintiff's motion.

## I.    THE PROPOSED SETTLEMENT

### A.    The Settlement Consideration

The initiation and prosecution of this lawsuit enabled the Company to reach an agreement with its insurer to fund a substantial portion of the settlement in the Securities Action. As detailed in the Joint Declaration, the Settlement was restructured several times after Twinlab's filing for bankruptcy protection and is the best possible result for Twinlab and its stockholders.

### B.    After the Court Approved Notice, The Reaction of the Class Is Favorable

The Court preliminarily approved the Settlement in its Order dated June 23, 2005 (the "Preliminary Approval Order") and ordered that the parties publish the Summary Notice of Proposed Settlements and Fairness Hearing, in the form approved by this Court ("Summary Notice"), on a national news wire and that the Notice of Proposed Settlement and Fairness Hearing (the "Notice") be sent to all Twinlab stockholders by First Class Mail (publication of the Notice and Summary Notice is collectively referred to as the "Notice Program"). The Notice Program was designed to provide the best notice practicable and requires more than the notice

procedures in *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286 (S.D.N.Y. 1996). The Notice and Summary Notice described both the Proposed Settlement of the derivative action as well as the proposed settlement of the Securities Action.

The Notice Program complies with Rule 23.1 and due process, and provides all the necessary and required information concerning the Action, the proposed Settlement, the hearing date for final approval, the shareholders' rights to appear and file objections, the release of shareholder claims, and plaintiff's request for attorneys' fees and expenses.[1] The Notice Program meets the requirements of Rule 23.1 of the Federal Rules of Civil Procedure, which states that "notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." Fed. R. Civ. P. 23.1. See generally *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). As set forth in the Notice, the deadline for objections was July 14, 2005. No objections have been received.

## II. LEGAL AUTHORITY

### A. General Principles of Judicial Review of Settlements of Shareholder Derivative Lawsuits

It is well settled that "[c]ompromises of disputed claims are favored by the courts . . ." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). Indeed, there is a "general judicial policy favoring settlement" of litigation. *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 473 (S.D.N.Y. 1998); see also *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). This is particularly true in the case of representative actions such as class and derivative actions. *In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000), "'[t]he law favors settlements of

---

[1] Copies of the Notice and Summary Notice have been submitted in connection with settlement of the Securities Action.

3

class actions no less than of other cases.'" Id. at 351, quoting *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992) (citing Weinberger, 698 F.2d at 73).

Rule 23.1 prohibits the dismissal or compromise of derivative actions "without the approval of the Court." Under Second Circuit precedent, a derivative settlement must be "fair to all and [may] not favor the named plaintiff-shareholders or their counsel." *Blatt v. Dean Witter Reynolds InterCapital, Inc.*, 732 F.2d 304, 307 n.1 (2d Cir. 1984). The district court must examine "whether the settlement 'is so unfair on its face as to preclude judicial approval.'" *Id.* (citation omitted).

The Court must consider the substantive terms of a settlement and compare them to the likely rewards of litigation. *In re Metro. Life Derivative Litig.,* 935 F. Supp. at 291. *See also Blatt*, 732 F.2d at 307 n.1 (the Court approved a derivative settlement and attorneys' fees and held that the payment of attorney's fees by the defendant (rather than the Fund or those on whose behalf the suit was brought) actually benefited the Fund shareholders because the settlement package was not reduced by the payment of counsel fees).

District courts are afforded "broad discretion" in determining whether to approve a proposed settlement. *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 423-24 (S.D.N.Y. 2001). "In its exercise of that discretion, the Court must engage in a careful balancing act: 'The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case'." *Id.* (quoting *Grinnell*, 495 F.2d at 462).

The critical factors to be considered by the District Court in making a Rule 23.1 determination are:

4

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Interpublic Sec. Litig.*, No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at *20 (S.D.N.Y. Oct. 26, 2004), citing *Grinnell*, 495 F.2d at 463 and quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

The Settlement is fair and reasonable in all respects. It is being presented to the Court after the completion of extensive legal research and investigation, protracted arms-length negotiations, consideration of the Company's bankruptcy status, and, as discussed at length below, amply satisfies the requirements for Court approval.

### B. The Proposed Settlement Provides Significant Benefits To Twinlab

#### 1. The Complexity, Expense, and Likely Duration of The Litigation

The threshold factors to be considered in assessing the fairness and adequacy of a settlement in a derivative action are the complexity, expense, and likely duration of the litigation. In this case, continued litigation would be extremely complex, costly, and of substantial duration. Significant discovery, trial preparation, and the trial itself still lie ahead. Thus, the case has been settled at a time when significant additional resources would be necessary to continue the litigation.

In assessing the merits of the Settlement, plaintiff's counsel carefully considered the wide-ranging factual and legal hurdles that plaintiff would have faced had he continued to

5

prosecute the Action. While plaintiff believes that the allegations of the complaint more than satisfied the prevailing pleading standard for demand futility, nevertheless, the possibility of a decision favorable to the defendants existed absent this Settlement. *See*, *e.g., In re Abbott Labs Derivative S'holders Litig.*, 325 F.3d 795, 809 (7th Cir. 2003); *In re Cendant Corp. Derivative Litig.*, 189 F.R.D. 117 (S.D.N.Y. 2000); *McCall v. Scott*, 250 F.3d 997 (6th Cir. 2001); *In re Bank of New York Derivative Litig.*, Nos. 99 Civ. 9977 & 99 Civ. 10616 (DC), 2000 U.S. Dist. LEXIS 16502, at *2 (S.D.N.Y. Nov. 13, 2000). Further, in a derivative suit, even after the demand is excused, there are potentially several dispositive motions that could be made to bring the litigation to an end, including the appointment of a special committee to evaluate the allegations, and a motion to dismiss the complaint based on the special committee's conclusions that continued litigation would not be in Twinlab's best interests, particularly in light of the bankruptcy proceedings.

Even if plaintiff could fend off all of the motions and maneuvers by defendants to return control of the litigation of these claims to Twinlab, plaintiff still faced the burden of proving his claims. Plaintiff's counsel would have had to establish not just a breach of duty of care but bad faith or breach of loyalty on the part of the director defendants in order to overcome the provisions of Delaware General Corporate Law ' 102(b)(7), which protects corporate directors from all liability for breach of duties absent a showing of bad faith. Plaintiff believes that threshold demand futility obstacles were surmountable at the pleading stage based on plaintiff's detailed allegations. *See*, *e.g.*, *In re Abbott Labs*, 325 F.3d at 810; *McCall v. Scott*, 250 F.3d 997, 1001 (6th Cir. 2001). However, the resulting uncertainty, and the uncertainty inherent in all complex litigation, made the outcome of the case questionable, especially when weighed against the tangible, immediate benefits conferred by the Settlement.

6

A trial would occupy the Court, as well as numerous attorneys, on both sides for weeks. Further, in light of the highly contested nature of the action, a judgment favorable to plaintiff could unquestionably be the subject of post-trial motions and appeal, both of which would prolong the case and ultimately delay - if not deny - any potential benefit to Twinlab and its shareholders. *See*, *e.g., NASDAQ,* 187 F.R.D. at 477. Finally, given the bankruptcy status of Twinlab, there was a real possibility that any judgment might not be satisfied since the individual defendants' assets would be tied up with the Company.

The Settlement results in a substantial and tangible recovery now, without the attendant risk, delay, and expense of further discovery, summary judgment, trial, post-trial motions, and appeals. The potential for continued lengthy, expensive and complex litigation, with no guarantee of any greater recovery, weighs heavily in favor of the Settlement. *See Grinnell,* 495 F.2d at 467.

### 2. The Reaction of Current Shareholders Demonstrates The Adequacy of The Proposed Settlement

An important factor to be considered in determining the fairness of a derivative settlement in the view of some courts is the reaction of the shareholders to the proposed settlement. *See*, *e.g.*, *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *In re Am. Bank Note,* 127 F. Supp. 2d at 425. It has repeatedly been held that "the lack of objections may well evidence the fairness of the [s]ettlement." *See Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977); *see also In re Med. X-Ray Film Antitrust Litig.,* No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *4 (E.D.N.Y. Aug. 7, 1998).

The deadline for the filing objections to the Settlement was July 14, 2005. No objections to the Settlement have been filed. Therefore, those most affected by the Settlement have endorsed the Settlement as fair and reasonable. Joint Declaration at ¶ 3.

### 3. The Stage of The Proceeding and The Amount of Discovery Completed

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness, and adequacy of a proposed settlement. This is to ensure that a plaintiff has had access to sufficient material to evaluate his case and assess the adequacy of any settlement proposal in light of the strengths and weaknesses of his position. *See In re Am. Bank Note,* 127 F. Supp. 2d at 425-26. Here, plaintiff had the opportunity to conduct sufficient investigation and review of the facts, to permit an extensive and thorough analysis of the claims asserted.

Plaintiff also had access to and consulted with experts. Based on the settlement negotiations and plaintiff's counsel's investigation and discovery and analysis, the parties had "a clear view of the strengths and weaknesses of their cases" at the time the Settlement was reached. *See In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also Maley,* 186 F. Supp. 2d at 363-64. These negotiations and plaintiff's investigation provided a sufficient basis to support the decision to recommend the Settlement as fair and reasonable.

### 4. The Risks of Establishing Liability

Shareholder derivative litigation such as this generally involves complex issues of fact and law, and this case was no exception because, in large measure, the business judgment rule insulates the defendants from liability. While plaintiff was confident of the strength of his claims, plaintiff acknowledges the substantial risk in proving the elements of breach of fiduciary duty, some of which are inherently difficult to prove. Defendants have steadfastly maintained that they did not engage in any wrongful conduct, and plaintiff would face significant hurdles in proving otherwise. *See* Joint Declaration at ¶¶ 8-14.

In assessing the fairness, reasonableness, and adequacy of the proposed Settlement, the Court must balance the benefits afforded to Twinlab and the certainty of those benefits, against the continuing risks of litigation. The principal risks are the difficulties and complexities of proving liability and damages. Proving the liability of each defendant was by no means a foregone conclusion. Plaintiff's counsel are particularly aware that defendants have credible defenses to the allegations and causes of action, upon which defendants might prevail before or at trial, or on appeal and that as a result Twinlab might not receive any benefit or consideration for the claims asserted in the Action. *See* Joint Declaration at ¶¶ 22-29. Further, the Bankruptcy Court has considered the proposed Settlement and agreed to allow it to go forward in the interests of the debtor corporation, Twinlab.

### 5. There Are Substantial Risks of Establishing Damages

Plaintiff also faced substantial risks in proving damages. Assuming, *arguendo*, that plaintiff was successful in establishing liability, there are significant uncertainties as to both the amount and proportionate share of those damages. The issue of damages would have been hotly disputed, and would undoubtedly have been the subject of expert testimony proffered by all parties. *See In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages . . . is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable."). There is no guarantee the jury would have disregarded defendants' experts' opinions.

The damage assessment of experts retained by the parties on both sides would surely vary substantially and this element of plaintiff's case would be reduced at trial to a "battle of the experts." A jury might be swayed by defense experts who would likely opine that the

9

damages were caused by factors other than defendants' wrongdoing, or, alternatively, attempt to minimize the amount of losses suffered by Twinlab. *See*, *e.g.*, *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 129 (S.D.N.Y. 1997); *In re Am. Bank Note,* 127 F. Supp. 2d at 426-27. Expert testimony on damages could rest on many subjective assumptions, any one of which could be rejected by a jury as speculative or unreliable. As Judge Keenan has observed:

> Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.

*See In re Warner*, 618 F. Supp. at 744-45. Conceivably, a jury could find that there were no damages or that the damages were only a small fraction of the amount that plaintiff contended.

Consequently, while plaintiff believes that his claims are meritorious, and that Twinlab suffered real and substantial damage, plaintiff has avoided the substantial risks in proving damages and liability by virtue of the Settlement. The fairness and reasonableness of the Settlement, in light of the risks, are manifest.

### 6.     **The Risk of Maintaining The Action through Trial**

As this Court is well aware, in the context of a derivative action, the Nominal Defendant always has the right to designate a committee of outside non-management directors (often referred to as a "Special Litigation Committee") to review and determine the wisdom of continuing the litigation. This issue was further complicated by the Company's filing for bankruptcy protection. Either of these scenarios could have resulted in dismissal of the Action. In addition, plaintiff also confronted the usual risks that his case would be dismissed on a motion for summary judgment prior to any trial.

**7.     The Ability of Defendants to Withstand A Greater Judgment**

Given the posture of this case, as well as the uncertain outcome of continued litigation, the Settlement provides a substantial immediate benefit to the reorganization of the Company. *Id.* In *In re Interpublic*, the court held that although the settlement offered only therapeutic benefit to the shareholders, it was worthy of approval, noting that there was no unfairness in the settlement "that would otherwise bar its approval." 2004 U.S. Dist. LEXIS 2429, at *30. The recovery in this action provides for substantial benefit to the Company, *i.e.*, the recovery of a substantial sum of money towards the settlement of the Securities Action. Joint Declaration at ¶ 13. The $1,000,000 paid to the Company as part of the Settlement is a substantial portion of the final settlement of $3,000,000 in the class action. As the Company is in bankruptcy, the ability of defendants to withstand a greater judgment is highly questionable and risky.

**8.     The Range Of Reasonableness Of The Proposed Settlement In Light Of All The Risks Of Litigation**

The Settlement must also be balanced against the expense of achieving a more favorable, collectable, result at trial. Moreover, delay, not just at the trial stage but through post-trial motions and/or the appellate process, would cause the Company to continue its bankruptcy proceedings indefinitely. More importantly, Twinlab would have been forced to wait years for any recovery, further reducing its value. *See Grinnell,* 495 F.2d at 467; *see also Toys "R" Us*, 191 F.R.D. at 354 ("Had these cases proceeded, litigation would have been lengthy, highly complicated, and expensive.").

Indeed, in assessing the adequacy of a settlement in an action such as this, "a court must balance the benefits of a certain and immediate recovery against the inherent risks of litigation." *In re Med. X-ray,* 1998 U.S. Dist. LEXIS 14888, at *13. The court in *In re Med. X-*

11

*Ray* found that "[i]n light of the potential risks specific to this action as well as those inherent in any litigation, the class would face substantial risks of establishing liability should this litigation go to trial." *Id.*[2]   In sum, any settlement must be evaluated realistically both in terms of what is likely to be awarded by a jury and by what is likely to be recovered.

### 9.  Opinion of Counsel/Settlement Negotiations

Finally, in appraising the fairness of a proposed settlement, the opinion of experienced counsel is entitled to considerable weight.  *See Podesta v. Pay Television Corp.*, No. 80 Civ. 2819 (WCL), 1981 U.S. Dist. LEXIS 10494, at *7 (S.D.N.Y. Jan. 19, 1981) holding in a Rule 23.1 context that the opinion of experienced and competent plaintiffs' counsel is entitled to significant weight by the Court in approving the settlement.  *See also In re Am. Bank Note,* 127 F. Supp. 2d at 430.  Plaintiff's counsel agreed to the Settlement only after carefully evaluating the chances of greater success by continued prosecution of the Action and after lengthy, hard-fought arms-length negotiations and discovery.  Counsel, who specialize in such complex representative litigation, believe that the Settlement is an excellent result, both in absolute terms and when balanced against the substantial risks of continued litigation.  If the Settlement is approved, it will provide immediate and long-term benefits to Twinlab and its shareholders, and plaintiff's counsel respectfully recommend that it be approved.

---

[2]   The results in other cases continue to demonstrate the enormous risks of litigation. *See Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (en banc) (after jury verdict in favor of plaintiffs and the Class, reversing the district court's denial of judgment for defendants n.o.v. and remanding with instruction to dismiss the complaint); *Levinson v. Prentice-Hall, Inc.,* 868 F.2d 558*,* 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned); *MCI Communications Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081 (7th Cir. 1982) (a $1.8 billion antitrust judgment was remanded for a new trial on damages; second trial produced a dramatically smaller award); *Telex Corp. v. IBM Corp.,* 510 F.2d 894 (10th Cir. 1975) (a $259.5 million judgment for plaintiffs reversed); *Berkey Photo, Inc. v. Eastman Kodak, Co.,* 603 F.2d 263 (2d Cir.1979) (reversing $87 million judgment after trial).

In assessing whether a settlement is fair, reasonable and adequate, courts often focus on the "negotiating process by which the settlement was reached . . . ." *Weinberger,* 698 F.2d at 74. Courts look to this process in order to ensure that the settlement resulted from "arms length negotiations" between counsel with the "experience and ability . . . necessary to effective representation of the class's interests." *Id*. (citation omitted); *Grinnell,* 495 F.2d at 463-66.

As noted above, the parties had extended, arm's-length negotiations, in an effort to reach agreement on the principal terms of a settlement. The settlement negotiations were intense and hard fought, and conducted between experienced and skilled attorneys. *See* Joint Declaration at ¶¶ 15-17.

Taken together, the relevant criteria for finding a derivative action settlement fair and reasonable are clearly satisfied in this case. The Court should accordingly give its final approval to the proposed Settlement.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court approve the Settlement.

Dated: July 15, 2005

                              **ZWERLING, SCHACHTER
                              &amp; ZWERLING,** LLP

                        By:     /s/  Richard A. Speirs
                              Richard A. Speirs (RS-8872)
                              41 Madison Avenue
                              New York, New York 10010
                              (212) 223-3900

**WECHSLER HARWOOD LLP**

By:   /s/  Robert I. Harwood
      Robert I. Harwood (RH-3286)
      Daniella Quitt (DQ-1963)
      488 Madison Avenue
      New York, New York 10022
      (212) 935-7400

      *Plaintiff's Co-Lead Counsel*